IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| RANDY J. FERRIERA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  07-3141 |
| ) | |
| STATE OF ILLINOIS ) | |
| DEPARTMENT OF ) | |
| TRANSPORTATION, ) | |
| ) | |
| Defendant. ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Illinois Department of Transportation's (Department) Motion for Summary Judgment (d/e 15) (Motion).  The Plaintiff Randy Ferriera formerly worked for the Department.  In 2001, Ferriera became disabled in a work-related injury. Ferriera claims that the Department failed to provide a reasonable accommodation for his disability in violation of the Americans with Disabilities Act (ADA).  42 U.S.C. §§ 12112(a) & 12112(b)(5)(A).  The Department asks for summary judgment because Ferriera has failed to present evidence to establish that he was a qualified individual with a

1

disability under the ADA. The Court agrees. The Motion, therefore, is allowed.

STATEMENT OF FACTS

From 1994 to 2005, the Department employed Ferriera as a stationary engineer at the Department's headquarters facility located in Springfield, Illinois, and known as the Hanley Building. According to the Department's job description, stationary engineers: (1) operated and maintained heating, cooling, and air conditioning equipment; (2) used computer controls to implement energy conservation measures; (3) made rounds of assigned buildings at regular intervals; (4) monitored gauges and meters, and performed operational maintenance on equipment; and (5) performed other duties as assigned. Memorandum of Law in Support of Motion for Summary Judgment (d/e 16) (Defendant's Memorandum), Exhibit C, Job Description.

Ferriera described the job of stationary engineer in similar terms in his affidavit:

> The work of a stationary engineer for the Department involved monitoring various systems in the headquarters building and performing preventative maintenance on various pieces of equipment needed in connection with the operation of the headquarters building.

<u>Memorandum of the Plaintiff, Randy Ferriera, in Opposition to the Defendant's Motion for Summary Judgment (d/e 20)</u>, Attachment A, <u>Affidavit of the Plaintiff, Randy Ferriera (Ferriera Affidavit)</u>, ¶ 5.

In his deposition, Ferriera explained the physical requirements of the stationary engineer maintenance functions. Ferriera stated that stationary engineers "take care of all heating, cooling, climate control of the building, work on all confectionery [sic] pumps, motors, the chilling towers, all the plumbing, water." <u>Defendant's Memorandum</u>, Exhibit A, <u>Deposition Randy Ferriera (Ferriera Deposition)</u>, at 24-25. Ferriera said that stationary engineers had to walk, "All the time." <u>Id.</u>, at 25. He explained:

> Well, you have to check the whole building because there's motors, pumps and such and fans and blowers and compressors, and to make sure everything is working properly, we have a computerization system where we can change parameters on controllers and switch, you know, mix air to get the temperature better in certain rooms. . . . [T]he whole building has actuators and controllers throughout the whole place; I mean, there's hundreds of them.

<u>Id.</u>, at 25-26.

Stationary engineers also had to climb. Ferriera explained that engineers needed to climb to operate plumbing shut-off valves. <u>Id.</u>, at 27. Stationary engineers also had to climb to reach various lines:

3

> Well, all your piping, steam lines, water lines, compression, everything is above head. Your ceilings in the lower level, the boiler rooms, the chilling rooms are probably 30 feet high, and you've got big steam lines running through, and then chilled water and then return water. It's quite a bit [of climbing].

Id., at 30.

Stationary engineers also had to kneel and squat. Ferriera explained, "Well, if you're in any of these places, you have to get down to work on things, and you're on concrete floors and whatnot." Id., at 30. He explained that he had to squat to work on chiller units:

> Well, if you're working on a chiller unit, you're having to squat. You have to clean the coils and get down underneath the coils to clean them out, change filters. If there's something broken, you have to get down and work on a pump motor, change bearings.

Id., at 31.

Ferriera stated that stationary engineers had to lift things every day. Id., at 32. When asked if he had to lift things weighing more than five pounds, Ferriera said, "Absolutely." Id. He said that the amount of lifting depended on the assignment:

> If it was replacing a new shaft on a fan that had gone down, we had to put new pillow blocks in. That shaft alone weighs 300 pounds. The pillow blocks and the bearing are very heavy; pulleys and setting motors. There's a lot of heavy stuff.

4

Id., at 33.

According to Ferriera, most of the maintenance was performed on the day shift. Ferriera Affidavit, ¶¶ 6-7. Ferriera stated in his deposition, however, that a stationary engineer could be required to perform any maintenance at any time:

> You just never knew in a building that size when something is going to go kaput. I mean, it can happen any time, day, night.
>
> . . . .
>
> You'd have to address it right away, yeah.

Ferriera Deposition, at 31.

Ferriera agreed that the stationary engineering maintenance functions involved manual labor and walking:

> Manual, yeah, manual labor and walk. Every two hours, we were scheduled to tour the whole building to check for problem areas or equipment; not only the computer, we checked to see if there was any alarms that came up where there's sensors, but there's a lot of stuff that's not on there, so you have to physically walk and check all this stuff, make sure a pipe hasn't ruptured, a steam line, or a leak has developed and you have to take care of it.

Id., at 33-34.

On October 11, 2001, Ferriera was injured at work. He injured his

right knee, his left elbow, and his shoulders. He was off work as a result of these injuries from October 11, 2001, to January 30, 2003. When he returned to work, he was under the following restrictions from his physicians: (1) he could not walk for more than a block without sitting and resting; (2) he could only stand for short periods of time; (3) he could lift nothing above his head without pain; (4) he could not lift objects weighing more than five pounds; (5) he could not grip a tool with his left hand; and (6) he could engage only in limited physical activity which involved or required movement of his shoulders. Ferriera Affidavit, ¶ 12. Ferriera agreed in his deposition that, with these physical limitations, he could not perform maintenance functions that required physical exertion. Ferriera Deposition, at 55.

On January 30, 2003, Ferriera reported to the office of Helen Hammad in the Department's Workers' Compensation Unit. According to Ferriera, Hammad told him that, upon his return to work, he would monitor the building's systems, but would not be expected to do anything that required physical exertion. If he encountered any work that required physical exertion, he was directed to contact his supervisor, John Trees, who would arrange for someone else to do the work. Ferriera Affidavit, ¶ 16.

6

Ferreira worked in the manner described by Hammad from the end of January 2003, until March 2003. Thereafter, Trees assigned him to perform tasks beyond his medical restrictions. Trees also instructed Ferriera, and all of the other stationary engineers at the Hanley Building, to perform tasks that previously were performed by carpenters, plumbers, outside contractors, and janitorial staff. These additional tasks involved extensive physical exertion, including climbing, standing, overhead reaching, scrubbing, and heavy lifting. Id., ¶¶ 21-25. Ferriera performed these assignments to the best of his abilities. He complained to Trees and others, but received no assistance or meaningful response. Id., ¶¶ 24, 27-29.

On May 20, 2004, Ferriera again injured himself at work. Ferriera thereafter provided the Department with a note from his physician, William Yu, M.D. Defendant's Memorandum, Exhibit D, Medical Note dated May 26, 2004. The note stated that Ferriera was still under physical restrictions of no kneeling, squatting, climbing ladders, and no lifting over thirty pounds. Ferriera continued to work until June 4, 2004. At that time, Trees told him that he was not permitted to work unless he could work without any physical restrictions. He never returned to work. According to the Department, Ferriera was allowed to go on a non-occupational leave of

7

absence at that point.

## ANALYSIS

At summary judgment, the Department must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Ferriera. Any doubt as to the existence of a genuine issue for trial must be resolved against the Department. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once the Department has met its burden, Ferriera must present evidence to show that issues of fact remain with respect to an issue essential to his case, and on which he will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Ferriera asserts a claim for failure to accommodate his disability in violation of the ADA. To establish this claim, Ferriera must present evidence that: (1) he was a qualified individual with a disability; (2) the Department was aware of the disability; and (3) The Department failed to provide a reasonable accommodation for his disability. 42 U.S.C. § 12112(b)(5)(A); Hoffman v. Caterpillar, Inc., 256 F.3d 568, 572 (7th Cir.

2001). A qualified individual with a disability is a disabled individual who, with or without a reasonable accommodation, can perform the essential functions of the position that the individual holds or desires. 42 U.S.C. § 12111(8). A reasonable accommodation is an adjustment that allows the disabled individual to perform the essential functions of the job. A reasonable accommodation may include modifying the work environment to allow accessibility, providing special tools that will allow the individual to perform the essential functions of the job, or restructuring the job to eliminate non-essential functions from the position. 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o).

In this case, the evidence shows that Ferriera could not perform the essential function of maintenance. The uncontroverted evidence shows that performing maintenance on various heating, ventilation, and cooling systems was an essential function of the stationary engineer position. Ferriera explained in his deposition that a stationary engineer had to be able to take care of a problem with any of these systems at any time, day or night. Thus, a stationary engineer had to be able to perform maintenance on every shift. According to Ferriera, a stationary engineer had to be able to squat, kneel, climb and lift to perform maintenance. Ferriera could not

perform these essential functions. He could not grip a tool with his left hand. He could not lift more than thirty pounds. He could not lift anything over his head. He could only engage in limited activity that involved or required significant movement of his shoulders. Thus, he could not perform the lifting, kneeling, squatting, and climbing necessary to perform the maintenance functions of the job. Ferriera could not perform an essential function of the stationary engineer position.[1]

Ferriera argues that he could perform the essential functions of the stationary engineer position with a reasonable accommodation. He argues that the Department could have provided a reasonable accommodation by eliminating the maintenance functions that required physical exertion, or by having someone else perform those functions for him. Neither of these options is a reasonable accommodation. Job restructuring may constitute a reasonable accommodation if the restructuring eliminates non-essential functions from the position. Hoffman, 256 F.3d at 577. Maintenance, however, was an essential function. Altering the job to eliminate this

---

[1] The additional tasks assigned to all stationary engineers in 2003 and 2004, such as painting and cleaning, were not included in the job description. The Court assumes for purposes of summary judgment that those functions were not essential functions of the position. Regardless, however, Ferriera concedes that he could not engage in the physical exertion necessary to perform the essential function of maintenance.

essential function would not be a reasonable accommodation. See <u>Basith v. Cook County</u>, 241 F.3d 919, 929-30 (7th Cir. 2001). Also, having someone else perform the essential function would not be a reasonable accommodation. <u>Peters v. City of Mauston</u>, 311 F.3d 835, 845-46 (7th Cir. 2002). Ferriera, thus, has failed to present evidence that he could perform this essential function of the job with or without a reasonable accommodation. He was not a qualified individual with a disability.

Ferriera argues that the Department, in fact, provided such an accommodation when Hammad told him that he would not be required to perform any part of the stationary engineer position that required physical exertion. He argues that this shows that the accommodation was reasonable. However, the Department may elect to go beyond the requirements of the ADA and provide a greater accommodation for whatever reason, but that action does not create an obligation under the ADA to continue to provide such an accommodation. See <u>Watson v. Lithonia Lighting</u>, 304 F.3d 749, 752 (7th Cir. 2002) (employer who placed returning worker on light duty was not required by ADA to let the employee stay on light duty indefinitely). The Department was not required to eliminate the essential function of maintenance from the stationary engineer

position.

Ferriera also argues that Hammad, on behalf of the Department, promised him that he could come back to work as a stationary engineer and not be required to perform any functions that required physical exertion, and then the Department breached that promise. This observation may or may not be a basis for a breach of contract claim against the Department, but it is not a basis for an ADA claim.[2] Ferriera could not perform the essential function of maintenance. He has presented evidence that, after his injuries, he could only perform the stationary engineering position if: (1) the essential function of maintenance was removed from the position, or (2) someone else performed that essential function for him. Neither option was a reasonable accommodation. Ferriera, therefore, has failed to present evidence that he was a qualified individual with a disability for purposes of the ADA. He, therefore, has failed to present sufficient evidence to make out an ADA claim for failure to accommodate. The Department is entitled to summary judgment.

THEREFORE, the Defendant's Motion for Summary Judgment (d/e

---

[2]This Court also lacks authority to hear a breach of contract claim by Ferriera against the State of Illinois. U.S. Const. Amend. XI.

15) is ALLOWED. Summary judgment is entered in favor of Defendant Illinois Department of Transportation and against Plaintiff Randy J. Ferriera. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: March 23, 2009

    FOR THE COURT:

                                        s/ Jeanne E. Scott
                                        JEANNE E. SCOTT
                                    UNITED STATES DISTRICT JUDGE